BROWN *versus* HAY & GERMANY.

Under the act of 1806, regulating the grant of administration, to the next of kin if there be no widow ; the father is entitled to the administration, in preference to the sisters or brothers of the intestate.

In this case, the plaintiff in error, together with the defendants, applied to the County Court of Montgomery county, for letters of administration on the estate of James Brown. Brown had died intestate, leaving neither widow, or child. Hay & Germany were the husbands of two of the sisters of Brown, and the plaintiff was the father. The County Court granted the administration to the defendants in right of their wives, to the exclusion of the father, who took an appeal to the Circuit Court. The Circuit Court affirmed the decision of the County Court, and the

plaintiff on that affirmation took a writ of error, which brought the case here for revision.

*Goldthwaite*, for Plaintiff.—This depends on the statute of 1806—*Toul. Dig.* 324. The question is, who is entitled to the administration. We must advert to the English rules for the principles of descent of real estate. The descent as to real estates is by the Common Law; but personal estates descend as at Civil Law in the Spiritual Courts. Our statute is precisely the same as the English law, so far as the personal estate is concerned, and the same rules must govern. Then who is next of kin? That must be determined by the rules of the Civil Law, for it is so fixed in the 15th section of the statute. By the rules of the Common Law, the parties would, in this case, stand in precisely the same degree; but by the Civil Law they stand in different degree. The father is first, and brother second at Civil Law, because nearest to *propositus.*—2 *Bl. Com.* 504. The words of the English statute and of our own, are exactly similar—so the rules of construction. The rule is distinctly laid down in *Blackstone,* and can not be questioned, so far as relates to administration. In 1 *Peere Wms.* 40, 41, will be found an analagous case, similar in principles to this.

In England, the father takes all the estate to the exclusion of brothers and sisters: in this country it is the reverse. Now although the Legislature has changed the right of descent, they have not the right of administration. Whether casually or not—can this Court now go farther than the Legislature has gone? Has it power to divest a right not divested by the law?

The right to distribution does not govern the right of administration—for if one followed the other, the law would give it to *all* distributees in the same grade; but it gives the Court a right to select one out of them, and to defeat others of equal grade.

The same doctrine is found in 1 *Salk.* 38.

The statute does not proceed on the right to distribution, for in some cases a creditor becomes entitled to the administration : also a widow before all. The statute gives the right to the widow, when she would be entitled only to one-third, and the child to two-thirds : therefore, the Legislature never intended that the right to administer should follow the greatest interest. Another rule is in fact laid down—Administration is given to those first, who, from affection, would most likely take care of the estate. After them, it is given to those most interested. Now who is most likely from affection to take care of the estate? the father or the brother. The one is father to all; and brothers may disagree. The statute thus gives the right to the widow before the brothers. From her affection, she is the most interested in the preservation of the property—and so the father. Under this rule, the grand-father takes the right before the uncle or aunt.

LIPSCOMBE, C. J.—James Brown died intestate, leaving no wife or child; but left two sisters, the wives of the present defendants, and his father Allen Brown, the plaintiff. The Judge of the County Court granted administration to the defendants in right of their wives, in exclusion of the father. The father appealed to the Circuit Court, where the order of appointment, made by the Judge of the County

Court, was affirmed, from which judgment the case is brought into this Court by a writ of error. The question to be decided is one of construction, arising on the act of the Mississippi Territory of 1806, in force in this State.[a] By the 20th section of this act, [a]Toul.Dig. 324. the administration is given to the widow, if there be one; if not, then to the *next of kin*, or some of them. The question turns mainly on what is meant by the next of kin: whether the degree is to be ascertained by resorting to the Canon or Civil Law rules. If the computation of the degrees of propinquity is to be made according to the Canon Law, then the father and his daughters would stand in an equal degree, each being one remove from the desceased, the *terminus a quo* of computation. But according to the Civil Law the father, as the common ancestor of the deceased, and his surviving sisters, would be the *propositus* in the geneological table, and each remove in the ascending and descending line would count a degree. Thus the ascent of the sisters to Allen Brown, the plaintiff, and common ancestor, is one degree: the descent from him to a level with the deceased brother, would be another degree, whereas the ascent from the deceased to the father who claims the administration, is but one degree.[b] It is at the discre- [b]2 Blacks. Com. 324, tion of the Judge of the County Court, to make a se- 504. tion from those in equal degrees, if there is no widow, or she is from any cause passed; and the selection of the husbands of the sisters to the exclusion of the father, would be no ground of reversal, if their rights were equal, as they would be if the Canon Law rule of computing propinquity is the one contemplated by the act of 1806. But if the Civil Law rule is the correct one, then the father's right is superior

to his daughter's. In giving a construction to the meaning of next of kin as used in the act of 1806, if we were left in any degree of uncertainty as to which should be adopted, the Civil or Canon Law meaning of the term, there would be some reason in setting the question in favor of the Canon Law, as that rule would in this instance throw the administration on the persons entitled to the property of the deceased under our statute of descents. This reason would not always hold good, because not unfrequently the persons entitled to the property would not be in a situation from infancy or from some other cause, to take on themselves the administration, and in such cases there could perhaps be no safer depository of the trust, than with the common ancestor. But the 16th section of the same act of 1806, directs that in ascertaining the next of kin, it shall be according to the rule of the Civil Law.[a]

[a]Toul.Dig. 886.

The Legislature then having explained in what manner the next of kin shall be computed in the 16th section, although that section relates to descents, we are bound to infer that the 20th, and all other subsequent sections, wherever the same term occurs, should be subjected to the same rule.

We are therefore brought to the conclusion, that the father's right to the administration should have been preferred to the sisters', and that the judgments of the County and Circuit Courts must be reversed.